FILED-CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS 02 JUN 12 PM 2: 47
BEAUMONT DIVISION

TX EASTERN-BEAUMONT

BY _Marilyn Perez_

| | |
|---|---|
| BEAUMONT FIREMEN'S RELIEF AND RETIREMENT FUND, A TRUST CREATED UNDER THE TEXAS LOCAL FIREFIGHTER'S RETIREMENT ACT, ARTICLE 6243e, TEXAS REV. CIV. STAT. | § § § § § § |
| VS. | § CIVIL ACTION NO. 1:02-cv-00214 § |
| CALLAN ASSOCIATES, INC. and ARM CAPITAL ADVISORS, INC. | § JUDGE HOWELL COBB § |

## PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Beaumont Firemen's Relief and Retirement Fund, a Trust Created

Under the Texas Local Firefighter's Retirement Act, Article 6243e, Texas Rev. Civ. Stat., Plaintiff

herein complaining of Callan Associates, Inc. and ARM Capital Advisors, Inc., hereinafter referred

to as Defendants, and makes and files this their Second Amended Original Complaint and in support

hereof would show unto the Court the following:

1.

This is a civil action for damages brought pursuant to Title 28 U.S.C. §1332, in that

there is diversity of citizenship between Plaintiff and Defendants, and the amount in controversy,

exceeds the sum or value of SEVENTY-FIVE THOUSAND AND NO/100 ($75,000.00)

DOLLARS, exclusive of interest and costs.

2.

Plaintiff is an organization located in Jefferson County, Texas and at all times relevant to this suit, a resident of the State of Texas for the purpose of determining diversity jurisdiction.

3.

Defendant, Callan Associates, Inc., has appeared and answered herein and is properly before this Court and is being provided a copy of this Second Amended Original Complaint by and through its attorney of record.  Defendant Callan Associates, Inc. is a California resident for the purposes of determining diversity jurisdiction.

4.

Defendant, ARM Capital Advisors, Inc., has appeared and answered herein and is properly before this Court and is being provided a copy of this Second Amended Original Complaint by and through its attorney of record.  Defendant ARM Capital Advisors, Inc. is a  New York resident for the purposes of determining diversity jurisdiction.

**NATURE OF CASE**

5.

Defendant Callan Associates, Inc. (hereinafter "Callan") is an entity engaged in providing certain investment consulting services to organizations who have retirement plans.

6.

Defendant ARM Capital Advisors, Inc. (hereinafter "ARM") is an entity engaged in the investment of funds in the capital markets for others.

7.

Plaintiff was a client of Callan and ARM.  In 1986, Plaintiff hired Callan to consult with regard to its entire retirement asset fund and subsequently entered into a written management agreement to do so.  See Exhibit "A."

8.

Callan, over time, consulted with Plaintiff about specific firms to manage select portions of the fund.  One of these, Defendant ARM, was to oversee a very conservative aspect of the portfolio, made up of investments intended to stabilize the portfolio.

9.

Plaintiff, at Callan's suggestion, entered into an agreement with ARM on September 16, 1996, for them to manage the fixed income portion of their portfolio.  See Exhibit "B."

10.

Defendant ARM was to act as an agent for Plaintiff in the investment of their pension funds.  Defendant ARM owed a duty to exercise reasonable care in the management of Plaintiff's accounts and investments.

11.

Initially, Plaintiff was assured by Defendant Callan that Plaintiff's fixed income investment with ARM would be in investment grade securities and diversified.

12.

Despite Defendant Callan's reluctance to do so, upon realizing Defendant ARM had not managed the fund's assets as contracted, Plaintiff terminated their association with Defendant ARM and liquidated the portion of the fixed income portfolio as was possible, at a substantial loss.

Plaintiff's Second Amended Original Complaint - 3

## FIRST CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY OF CALLAN ASSOCIATES, INC.

13.

Plaintiff would show, as stated above, that a fiduciary relationship existed between Plaintiff and Defendant Callan.   Plaintiff and Defendant Callan maintained a confidential relationship which included the reliance on one another to perform as agreed.

14.

The breach of the fiduciary duties occurred when Defendant Callan breached its agreement to provide adequate independent investment consulting services with respect to the management of the Plaintiff's assets as contemplated.

15.

Specifically, Plaintiff alleges that they relied heavily on Defendant Callan for advice as to choosing, monitoring and whether to retain managers of its pension fund.   Plaintiff was presented with options for its fixed income manager by Callan and was persuaded to use ARM in 1996 by Callan employee, agent or vice-principal, Bill Badger.   When Plaintiff expressed concerns at ARM's performance at subsequent quarterly meetings which were held between the Plaintiff and Callan, it was only suggested by Bill Badger that an "eye should be kept on the situation" but nothing else was done about the problem.

16.

Additionally, Plaintiff was encouraged by Callan to reduce the investment quality mandate in its fixed income portfolio to accommodate the downgrades seen in ARM's portfolio rather than to maintain the initially higher standards and deal with the fund management problem.

It is believed that part of the reason for Callan's position on this matter is that ARM and Callan had a business arrangement that created an inherent conflict of interest for Callan.

17.

Plaintiff further states that only after several times being questioned about the sub par results of the ARM fixed income portfolio, and only after large losses sustained by the Plaintiff in ARM investments, was ARM terminated as Plaintiff's fixed income manager.

## SECOND CAUSE OF ACTION
## NEGLIGENCE OF CALLAN ASSOCIATES, INC.

18.

Plaintiff realleges and adopts by reference all of the allegations of the foregoing paragraphs and further alleges:

19.

Plaintiff would show that Defendant Callan is guilty of negligence in the handling of Plaintiff's investments and money. Plaintiff would show they have incurred a substantial loss of their investment. Plaintiff would allege that any loss of their investment and money was proximately caused by the negligence on part of Defendant Callan.

20.

Plaintiff alleges that Callan was negligent in the selection and monitoring of ARM.

21.

Moreover, with respect to Callan, this Defendant was contracted with and paid a fee for, among other things, helping to select appropriate fund managers as well as to provide quarterly performance analysis and to advise Plaintiff accordingly. Plaintiff alleges that to the extent that these services were rendered, they were inadequate. Plaintiff was pacified at quarterly meetings by

Callan's representative, Bill Badger, who assured them he was keeping abreast of the ARM investments, but at the same time, Badger recommended they lower their investment guidelines to accommodate the drop in the ARM investments' quality.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT OF CALLAN ASSOCIATES, INC.

22.

Plaintiff realleges and adopts by reference all of the allegations of the foregoing paragraphs and further alleges:

23.

Plaintiff would show that Defendants are in violation of their contractual duties, more particularly set forth in the contract attached. See Exhibit "A." Specifically, Callan was to provide independent consulting services to Plaintiff. Plaintiff alleges conflicts, as previously plead, were in existence between Callan and ARM, viz-a-viz the Plaintiff, which resulted in Callan's services not truly being independent.

24.

Further, Plaintiff alleges Callan did not adequately perform its obligations of presenting quarterly performance appraisals as contemplated by the agreement between the parties. Callan did not adequately inform Plaintiff as to the deviation form the plan's investment guidelines by ARM or of the extremely poor condition of the assets in which ARM had invested.

25.

Plaintiff would show that they are entitled to reasonable and necessary attorneys' fees.

## FOURTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY OF ARM CAPITAL ADVISORS, INC.

26.

Plaintiff realleges and adopts by reference all of the allegations of the foregoing paragraphs and further alleges:

27.

Plaintiff would show, as stated above, that a fiduciary relationship existed between Plaintiff and Defendant ARM. Plaintiff and Defendant ARM maintained a confidential relationship which included the reliance on one another to perform as agreed. The breach of the fiduciary duties occurred when Defendant ARM breached its agreement to provide adequate investment management services with respect to the Plaintiff's assets as contemplated. Defendant ARM breached its fiduciary duty to Plaintiff by failing to invest in the proper class and quality of investments as agreed.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE OF ARM CAPITAL ADVISORS, INC.

28.

Plaintiff realleges and adopts by reference all of the allegations of the foregoing paragraphs and further alleges:

29.

Plaintiff would show that Defendant ARM was negligent in the handling of Plaintiff's investments and money. Defendant ARM was negligent in deviating from the investment objectives and guidelines found in the contract attached as Exhibit "B," by investing in lower grade securities than called for in the agreement. Plaintiff would show they have incurred a substantial loss of their investment. Plaintiff would allege that any loss of their investment and money was proximately caused by the negligence on part of Defendant ARM.

Plaintiff's Second Amended Original Complaint - 7

## SIXTH CAUSE OF ACTION
## BREACH OF CONTRACT OF ARM CAPITAL ADVISORS, INC.

30.

Plaintiff realleges and adopts by reference all of the allegations of the foregoing paragraphs and further alleges:

31.

Plaintiff would show that Defendants are in violation of their contractual duties, more particularly set forth in the contract attached. See Exhibit "B." Specifically, ARM was to provide asset management services to Plaintiff. ARM did not adequately inform Plaintiff as to its deviation from the plan's investment guidelines or of the poor condition of the assets in which ARM had invested. Plaintiff alleges these acts were in bad faith or, in the alternative, constituted wilful or reckless misconduct or violation of applicable law as herein stated.

32.

Plaintiff would show that they are entitled to reasonable and necessary attorneys' fees.

33.

Exhibits A and B are incorporated herein by reference as if fully set forth at length.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final judgment, Plaintiff have judgment against Defendants, jointly and severally, for their damages in an amount within the jurisdictional limits of the Court, prejudgment and post-judgment interest, costs of court, attorneys fees, punitive damages and for such other and further relief to which Plaintiff may be justly entitled to receive.

Respectfully submitted,

MOORE, LANDREY, L.L.P.
390 Park Street, Suite 500
Beaumont, Texas  77701
(409) 835-3891
(409) 835-2707 FAX

ETHAN L. SHAW
State Bar No. 18140480
JOHN P. COWART
State Bar No. 04919500

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of the foregoing has been mailed by certified mail, return receipt to Mr. Paul A. Renne / Mr. Charles M. Schaible, Cooley Godward, L.L.P., One Maritime Plaza, 20th Floor, San Francisco, CA 94111; Mr. Philip Werner, Werner & Kerrigan, L.L.P., 1300 Post Oak Blvd., Ste. 2225, Houston, TX 77056; and Mr. Neill C. Kling, Harkins Cunningham, 2600 One Commerce Square, 2005 Market Street, Philadelphia, PA 19103-7042 on this _____ day of June, 2002.

JOHN P. COWART

# EXHIBIT "A"

# CONTRACT FOR CONSULTING SERVICES

# CALLAN ASSOCIATES INC.

## AND

## BEAUMONT FIREMEN'S RELIEF AND RETIREMENT FUND

This Agreement is made and entered into by and between Callan Associates Inc., a California corporation (hereinafter referred to as Callan), and the Beaumont Firemen's Relief and Retirement Fund (hereinafter referred to as the Fund), to provide independent investment consulting services to the Beaumont Firemen's Relief and Retirement Fund.

I.    SCOPE OF WORK

Callan will provide the following services, prepare the following reports including charts, schedules or other documentation necessary in presenting performance management tools to the Fund.

A.    **Performance Analysis**

1.    Callan will utilize asset and return data prepared by the Plan trustee and others and which are delivered to Callan in industry standard form, content, and layout and will perform portfolio and comparative return analyses. Callan will provide quarterly investment measurement reports and make presentations to appropriate individuals and committees as designated by the Fund, and will participate in regular quarterly performance appraisal meetings with the investment managers appointed by the Fund's office in Beaumont, Texas. This service will be provided for two investment managers. Should more than two investment managers be appointed by the Fund, the performance measurement fee in paragraph V below will be adjusted upward to reflect the additional work required to produce the report.

B.    **Investment Manager Controls**

1.    Investment Manager Liaison:  Callan will participate, in regular meetings with investment managers, in the negotiation of fee arrangements with the managers in the development and review of manager contracts. Quarterly, Callan will contrast the performance achieved for the Fund accounts with the composite performance results reported by managers. Callan will assist in the evaluation of requests for changes in guidelines, and performance targets. Callan will assist staff in planning, oversight and review of asset transitions among managers.

2.   Managing Managers Reports:  Callan will prepare a comparative return report reviewing each manager's performance against the accepted performance target and the market cycle timeline.

## II.   CALLAN INVESTMENTS INSTITUTE

The Callan Investments Institute (CII) is a continuing education and research facility in the pension and investments industry.  A division of Callan Associates Inc., the Institute was established in 1980 and its membership has steadily grown to over 250 leading corporate, public, endowment/foundation and multi-employer plan sponsor and investment management organizations.

The Fund will be a member of the Institute and will be provided with copies of surveys, research and performance data distributed to institute members.   In addition, six individuals will be able to attend both the regional and national conferences at no conference fee.  Additional representatives may attend at nominal cost (designed to cover the cost of meals and materials).

## III.   TRAVEL AND EXPENSES

The fee covers all travel and expenses to regularly scheduled client meetings in Beaumont, Texas.

## IV.   CANCELLATION

The Fund may cancel this Agreement upon ninety (90) calendar days written notice to Callan.  The effective date of such notice shall begin three (3) calendar days after date of posting with the United States Postal Service by regular mail, postage prepaid, addressed to the last known address of Callan.  The Fund shall pay for the services rendered by Callan to the effective date on a pro rata basis consistent with the fees set forth in paragraph V.

## V.   FEES

A.   The annual fee for the services referenced in the Scope of Work section is $21,000 and will be billed monthly.

B.  Fees in whole or in part may be satisfied at the sole option of the Fund by utilizing brokerage commissions directed to Alpha Management Inc. (hereinafter referred to as Alpha). If Alpha is used for trading, a ratio of two to one (2:00:1) is hereby agreed upon; i.e., $2.00 in commissions satisfies $1.00 of cash fees. Fees may also be satisfied by cash payments. In the event that commissions paid to Alpha exceed an amount equal to 2.00 times the cash fees charged during any calendar quarter, Callan will reimburse back to the Plan, no later than fifteen (15) days after the end of each calendar quarter, an amount equal to fifty (50%) percent of each prior calendar quarter's excess.

C.  Special project fees shall be billed 50% in advance and 50% at completion.

D.  Any additional or specialized consulting services not referenced in Paragraph 1 herein shall be charged to the Fund at Callan's normal rates. Such consulting shall be charged to the Fund in minimum half-day increments with a Senior Consultant billed at $2,000 per day plus expenses and Consulting Support billed at $600 per day plus expenses.

E.  Should any of the data supplied to Callan from any source be in a non industry standard form, content and/or layout requiring Callan to engage in additional and/or non industry standard work effort, or should the Plan Trustee and other asset custodians be unable to provide a suitable industry standard electronic form content and/or layout of data to Callan, any additional and/or specialized costs incurred by Callan as a result thereof will be charged to the Fund in addition to the fees detailed in Section V of this Agreement.

F.  This contract will be effective April 1, 1994.

## VI.  PAYMENTS

The Fund may make cash payments within a reasonable time after receipt of billing from Callan and/or Alpha. All fees will be payable to Callan and/or Alpha in U.S. dollars, payable from a U.S. based bank or to the financial institution and drawn upon a branch of that bank or institution located within the fifty states or the District of Columbia. Commission payments, if any, are expected to be received by Alpha as part of each individual normal trade settlement process or within 30 days of receipt of monthly billing.

## VII.  PROFESSIONAL CONSULTANT

All performance reports, audits, analysis studies, advisory reports, and evaluation tools will be reviewed, analyzed and presented by a professional Callan consultant to the Fund or its designees at the Fund's offices in Beaumont, Texas.

## VIII.   LAWS, STATUTES AND OTHER GOVERNMENT REQUIREMENTS

Callan and the services performed by Callan will be in full compliance with all applicable laws, rules, statutes, regulations, and other governmental provisions.

## IX.   CHANGES IN THE AGREEMENT

Any change to this agreement will be in writing in the form of an amendment duly executed by the parties hereto.

## X.   GOVERNING LAW

This Agreement will be governed and construed in accordance with the laws of the State of Texas, except to the extent such laws are preempted by applicable federal law.

**BY THE SIGNATURES** affixed below, this Agreement is hereby accepted as to all the terms and conditions.

Callan Associates Inc.                          Beaumont Firemen's Relief and Retirement Funds

By: _Paul V. Troup_                        _Morris E. Sandifer, Jr._

Title: _Executive Vice President_      Title: _Chairman_

Date: _June 9, 1994_                       Date: _June 9, 1994_

# EXHIBIT "B"

## INVESTMENT MANAGEMENT AGREEMENT

AGREEMENT, made as of this ___16th___ day of ___September___ 1996 between {Name and Address of Organization} (the "Client") and ARM Capital Advisors, Inc. 200 Park Avenue, New York, NY 10166 (the "Manager").

WHEREAS,

1.     The Client is a _Beaumont Firemen's Relief and Retirement F_ with authority to appoint an Investment manager; and

2.     The Client has allocated certain assets to a separate account (account number _5502050-1393400___ ) (the "Account") maintained with ( _Texas Commerce Bank_ ) (the "Custodian"); and

3.     The Client desires to appoint the Manager to manage the assets now or hereafter contained in the Account and has directed the Custodian to respond to the investment instructions of the Manager, and the Manager agrees to serve as investment manager of the Account.

1

SEP 09  98  12:21PM ART CAPITAL ADV. 212-978-2289

NOW, THEREFORE, the Client and the Manager do hereby agree each with the other as follows:

1.       Appointment and Authority of the Manager.  (a) The Client hereby appoints the Manager as an investment manager with respect to the assets in the Account.  The Manager shall manage the Account with complete discretion in the investment and reinvestment of the assets in the Account in accordance with the Manager's best judgment based on information available to it and the guidelines specified by the Client in writing from time to time, which guidelines may be modified by the Client in writing from time to time.  The Client represents that any written investment guidelines supplied to the Manager, and any written modification of those guidelines shall be, consistent with the investment objectives and limitations of the account. Lacking any written investment guidelines, the Manager will have full investment discretion.  The Client further agrees that, during the Manager's term of appointment, it shall not make, nor shall it cause to be made, any additions to or withdrawals from the assets in the Account except upon ten days' prior written notice to the Manager.

(b)       Subject to the general limitations of the guidelines specified by the Client, if any, the Manager is authorized, on behalf of the Account, to subscribe for and purchase rights, warrants, or any other debt or equity securities of U.S. issuers offered to U.S. persons in private placements in reliance on Regulation D under the Securities Act.  The Client represents to the Manager that the Plan is an "accredited investor" as such term is defined in Regulation D under the Securities Act.

In connection with any purchase for the Account of securities offered to "accredited investors" in reliance on Regulation D under the Securities Act, the Client authorizes the Manager to:

(i) commit to purchase such securities for the Account on the terms and conditions under which such securities are offered; and

2

(ii) on behalf of the Client, execute such documents, and make such commitments, as may be required by the issuer and/or the seller of such securities, including but not limited to a representation that the Client is an "accredited investor", and a commitment that such securities will not be offered or sold by the Client except in compliance with the registration requirements of the Securities Act or an exemption therefrom.

The Client understands and agrees that the Client shall be bound by the terms of any commitment entered into in connection with the purchase of securities on behalf of the Client pursuant to the authority granted to the Manager pursuant to this Section 1 (b) notwithstanding a subsequent termination of this Agreement by the Manager or the Client.

The authority granted to the Manager pursuant to this Section 1 (b) may be revoked at any time by the Client in writing; provided, however, that any such revocation shall not act as a revocation of authority to purchase securities subscribed for on or prior to the date such revocation is received by the Manager or to execute any required documents and make any required commitments with respect thereto.

(c) The Manager shall determine how to vote all proxies received with respect to securities held in the Account.

2.    Custody. All transactions with respect to assets in the Account shall be carried out through the Custodian or such other custodian(s) of the Account as the Client shall appoint in writing.  The Manager shall have no responsibilities or liabilities with respect to custody arrangements made by the Client, or to any act, decision or other conduct of any custodian or of any other person having possession of the Client's funds or securities.  The Client represents and warrants that it has previously furnished, and will furnish, to the Manager true and complete copies of all agreements and any amendments thereto with any such custodian(s) having possession or custody of assets in the Account.

3

3. **Brokerage.** The Manager shall designate the broker or brokers through whom securities transactions for the Account are executed. In selecting any such broker, the Manager will consider the experience and skill of the firm's securities traders as well as the firm's financial responsibility and administrative efficiency. The firms which the Manager designates will generally be firms that, in addition to handling execution, furnish the Manager with research or other services which the Manager may use in providing advice to the Client and other customers. The Manager will not attempt to limit the use of any such firm as broker to those particular customer accounts which may benefit from the specific research or other services the firm provides, and thus, the additional services, such as research, provided by a broker executing transactions for the Account may not be utilized for the benefit of the Account. The Manager will endeavor to secure the best available terms for the Client, with due regard to the quality of research and other services provided by the broker. The Manager shall not be responsible for any acts or omissions by any broker or brokers, provided that the Manager is not negligent in the selection of such broker or brokers.

4. **Allocation of Investment Opportunities.** The Manager shall not be obligated to purchase or sell for the Account securities which the Manager may purchase or sell for itself or for the portfolios of other clients. Moreover, the Client acknowledges that circumstances may arise under which the Manager determines that, while it would be both desirable and suitable that a particular security be purchased or sold for the account of more than one of the Manager's portfolios, there is a limited supply or demand for that security. Under those circumstances, the Client acknowledges that, while the Manager will seek to allocate the opportunity to purchase or sell that security among those portfolios on an equitable basis (including as between portfolios of the Manager's nondiscretionary clients, to whom the Manager makes recommendations, and portfolios of its discretionary clients, such as the Client, with respect to whom the Manager has complete discretion over the assets under its management), the Manager shall not be required to, assure equality of treatment among all of its clients (including that the opportunity to purchase or sell that security will not be proportionally allocated among those portfolios according to any particular or predetermined standards or criteria).

4

5.  Investment Information.  The Account may include securities of companies for which the Manager's ultimate parent company, ARM Financial Group, Inc. has confidential relationships or in which it maintains a position or makes a market.  The Client appreciates that, for good commercial and legal reasons, material nonpublic information which becomes available to the ARM Financial Group, Inc. through these relationships cannot be passed on to the Manager or the Client.

6.  Liability.  The Manager shall assume no responsibility in connection with the performance of its responsibilities under this Agreement for errors of judgment or for other action taken in good faith unless involving gross negligence or willful or reckless misconduct or violation of applicable law.  Nothing herein shall constitute a waiver or limitation of any rights which the Client may have under the federal securities laws of the United States of America or of the rights which may not be waived under any other applicable law.

7.  Termination\Assignment.  This Agreement shall be effective as of September 16, 1996.  It may be terminated by either the Client or the Manager upon 30 days' prior written notice to the other.  Such termination will be effective upon the expiration of such 30 day period subject, however, to the completion of transactions initiated by the Manager prior to receipt of the notice.  No assignment (as such term is defined in the Investment Advisers Act of 1940) of this Agreement shall be made by either party without the consent of the other.

8.  Compensation to Manager.  The Manager shall be entitled to receive as compensation for services rendered a fee determined and paid as described in Appendix A to this Agreement.

9.  Applicable Law.  This Agreement shall be construed in accordance with and be governed by the laws of the State of New York, without giving effect to the conflict of law principles thereof.

5

SEP 09 '96 16:56 ARM CAPITAL ADVISORS INC

10.    <u>Notices.</u>  All notices and other written communications specified herein shall be deemed duly given if transmitted by air mail, telecopier to the Manager at 200 Park Avenue, New York, NY 10166, telecopier number (212) 973-2201, and to the Client at { 409-880-1469 }, telecopier number <u>409-880-1437</u>, or to such other address, telecopier number as shall be specified in a notice duly given.  All notices shall be effective upon receipt.

11.    <u>Client Brochure.</u>  We acknowledge receipt of Manager's current client disclosure brochure, Form ADV Part II.

12.    <u>Separability.</u>  In case one or more of the provisions contained in this Agreement shall be found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

13.    <u>Counterparts.</u>  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed of the day and year first above written.

ARM CAPITAL ADVISORS, INC.
by: Robert Mackey

By: Marie Sanders
(CLIENT'S NAME)  9/13/96

By: Beaumont Firemen's Relief and Retirement Fund

6

# APPENDIX A

## FEE SCHEDULE

## ARM CAPITAL ADVISORS, INC.

.50% on first $10 million

.40% on next $15 million

.30% on next $75 million

.20% on next $100 million

.15% on balance

7